IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STAN NAMAKO | : | |
|     Plaintiff, | : | NO. 08-3255 |
| | : | |
|     vs. | : | |
| | : | |
| ACME MARKETS, INC. | : | |
|     Defendant. | : | |

DuBOIS, J.                                                                                            March 11, 2010

**M E M O R A N D U M**

**I.**     **Introduction**

In the present action, pro se plaintiff Stan Namako claims that his employer, Acme Markets, Inc. ("Acme"), engaged in discrimination by failing to accommodate plaintiff's medical and mental conditions and firing plaintiff as a result of his disability. Presently before the Court is defendant's Motion for Summary Judgment ("Motion"), which the Court grants for the reasons set forth below.

**II.**     **Background**[1]

Plaintiff was employed by Acme for five years as an electrician, from July 2000 until his termination on October 25, 2005. (Pl.'s Dep. 9-11.) Plaintiff's job duties included installing, maintaining, and repairing the electrical equipment at 58 Acme stores. (Id. at 14.) Plaintiff regularly worked overtime. (See id. at 36.) As part of his employment, defendant gave plaintiff a cell phone for business use only to communicate with his supervisors and company employees. (Id. at 26.)

---

[1] These facts are undisputed unless otherwise noted.

In April 2005, plaintiff was diagnosed with high blood pressure and related migraine headaches, and prescribed medications for both conditions. (Id. at 114, 126.) In July 2005, plaintiff was hospitalized for five days due to a rise in his blood pressure.[2] (Id. at 40-41.) Plaintiff's father passed away in January 2003, and his mother-in-law passed away a year later, which caused plaintiff and his wife great emotional stress. (Id. at 36-37, 44.) From April to October 2005, plaintiff was also experiencing what he refers to as "family problems." (Id. at 36-37.)

Plaintiff first discussed with his supervisors, Jim Cowley and Jack Walther, a desire to work a regular work week with no overtime in July 2005. (Id. at 40-41.) Plaintiff's doctor recommended reducing overtime to treat plaintiff's high blood pressure, and plaintiff said he also wanted to spend more time at home due to emotional and family stress. (Id. at 36-41.) Thereafter, plaintiff chose to work overtime on only a few occasions "[t]o see how [he] could . . . cope with it," and returned to a normal forty-hour week when he realized that "[he] couldn't do it." (Id. at 56.) On three occasions between July and October 2005, Cowley and Walther asked plaintiff to work overtime due to emergencies. In response, plaintiff sais he could not do so. (Id. 47-48, 56.)

On October 3, 2005, plaintiff met with Cowley and Sunday Council-Baker, the manager of Human Resources, to discuss plaintiff's lack of confidence in his ability to perform job assignments. (Mem. of October 3, 2005, Pl.'s Resp. Ex. 1.) Plaintiff noted the recent deaths in his family, and that he had been absent due to his mother's illness and some dental appointments.

---

[2] Plaintiff also notes in his Response that he was hospitalized for three days in May 2005, and submits a Discharge Notice from Main Line Hospitals dated May 20, 2005. (Pl.'s Resp. Ex. 3.)

(Id.; Pl.'s Dep. 58-59.) Council-Baker recommended that plaintiff discuss any personal issues with Employment Assistance Program ("EAP") counselors, who would keep all information confidential. (Mem. of October 3, 2005, Pl.'s Resp. Ex. 1.) Plaintiff did seek assistance through EAP, and met with counselor Frank Blanche for the first time on October 17, 2005. (Pl.'s Resp. 2.)

In October 2005, Cowley was notified by defendant's communications department that Verizon Wireless reports for August, September, and October showed unusually high use of plaintiff's cell phone. From June 14, 2005, to September 13, 2005, 3,411 calls were made from plaintiff's phone for a total of 15,736 minutes. (Mot. ¶¶ 20-22.) The reports also disclosed personal calls to plaintiff's aunt, uncle, and father-in-law. (Id. ¶ 31.) During these months, 152 calls were made to plaintiff's aunt for a total of 5,386 minutes. (Mot. ¶¶ 32, 35, 37.)

Cowley and Walther met with plaintiff, two union representatives, and one additional company official on October 25, 2005, to address plaintiff's cell phone usage. (Id. ¶ 26.) Plaintiff admitted that he had made some personal calls, but disputed the accuracy of the phone records, particularly as to the length of calls. (Pl.'s Dep. 81-87.) He offered to pay for the personal calls he had made. (Id. at 73.) At the end of the meeting, Cowley fired plaintiff for excessive use of the company cell phone, effective immediately. (Id. at 69.)

Plaintiff claims that defendant discriminated against him by failing to accommodate his medical and mental conditions – specifically, high blood pressure, related migraine headaches, and emotional stress – and firing him as a result of those disabilities. (Id. at 101-03; Compl. ¶¶ 12-14, 32, 33.) Plaintiff, represented by counsel Andrew Calvelli, filed a charge with the Pennsylvania Human Relations Commission ("PHRC") on April 20, 2006, and cross-filed the

charge with the Equal Employment Opportunity Commission ("EEOC"). (Mot. ¶ 39-40.) In its Findings of the Investigation dated September 18, 2007, the PHRC concluded that "the investigation did not establish a prima facie case" of discrimination. (Mot. Ex. E, at 9.) The EEOC issued a Dismissal and Notice of Rights letter on April 17, 2008, adopting the findings of the PHRC and advising plaintiff of his right to sue under federal anti-discrimination law. (Mot. Ex. F.)

Plaintiff filed a Complaint in this Court on July 11, 2008, alleging two counts of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count One),[3] and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955 *et seq*. (Count Two). By Order of July 22, 2009, due to disagreements between plaintiff and his counsel over litigation strategy and discovery issues, the Court granted Calvelli's Motion to Withdraw as Counsel. Plaintiff now proceeds pro se in this action.

**III.     Standard of Review**

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). After this examination, a court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

[3] The Complaint also avers that defendant's actions violated the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991). (Compl. ¶ 42.) That legislation amended Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a), (a)(1). However, as plaintiff raises only the issue of discrimination due to plaintiff's disability, the Court will not evaluate plaintiff's claims under Title VII.

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There can be no genuine issue where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) ("Only evidence sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case merits consideration beyond the Rule 56 stage." (internal quotation marks omitted)). In order to be sufficient, the evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Where the evidence presented does not meet this threshold, "the plain language of Rule 56(c) mandates the entry of summary judgment." Celotex, 477 U.S. at 322.

**IV.    Discussion**

In his Complaint, plaintiff alleges that defendant discriminated against him by failing to provide a reasonable accommodation for his disability resulting from his high blood pressure, related migraine headaches, and emotional and family stress, and firing him because that disability prevented him from working overtime. (Compl. ¶¶ 12-14, 32, 33; Pl.'s Dep. 101-03.) In support of its Motion for Summary Judgment, defendant argues that (a) plaintiff does not establish a prima facie case under the ADA or PHRA, as he is not disabled under either statute

and cannot establish that defendant regarded him as disabled; (b) plaintiff presents no evidence that defendant's non-discriminatory reason for plaintiff's discharge is a pretext for discrimination, or that similarly situated individuals were treated more favorably; and (c) plaintiff's failure to accommodate claim cannot succeed because he was not disabled within the meaning of the statute and was nonetheless given every accommodation he requested. (Mot. 1-2.) The Court will address each of these arguments in turn.

### A.     The ADA, PHRA, and Recent Amendments

Courts within the Third Circuit "consider the ADA and PHRA claims simultaneously, because the Acts serve the same goals and are interpreted coextensively." Castellani v. Bucks County Mun., No. 08-3838, 2009 U.S. App. LEXIS 24765, at *4 (3d Cir. Nov. 10, 2009); see Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Thus, the Court will focus its analysis on plaintiff's ADA claims and extend its conclusions to encompass plaintiff's PHRA claims.

As a preliminary matter, the Court notes that Congress has recently amended the ADA by enacting the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008), which broadened the definition of disability under the Act effective January 1, 2009. However, courts must not retroactively apply legislation if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf v. USI Film Prods., 511 U.S. 244, 280 (U.S. 1994). Courts in this district have cited Landgraf in refusing to apply the ADAAA to discriminatory conduct occurring before January 1, 2009. See Seibert v. Lutron Elecs., No. 08-5139, 2009 U.S. Dist. LEXIS 110823, at *19 n.4 (E.D. Pa. Nov. 30, 2009); Lekich v. Mun. Police Officers Educ. Training Comm'n, No. 08-1048, 2009 U.S. Dist. LEXIS 16645, at *22 n.3

(E.D. Pa. Feb. 26, 2009). Accordingly, as the conduct at issue in this case occurred in 2005, the Court declines to apply the ADAAA. Instead, the Court will apply the ADA as enacted and interpreted before January 1, 2009.[4]

### B.     Plaintiff Fails to Establish a Prima Facie Case Because He is Not Disabled Under the Statute

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "In order to make out a prima facie case of disability discrimination under the ADA, [plaintiff] must establish that []he (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006) (citing Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002); Gaul v. Lucent Techs. Inc., 134 F.3d 576, 580 (3d Cir. 1998)). The third prong "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). Plaintiff claims both types of discrimination in the present case: first, that he was subject to an adverse employment action due to his disability, and second, that defendant failed to make reasonable accommodations.

Defendant argues that plaintiff fails to establish a prima facie case under the ADA because he does not satisfy the first prong of the test, which requires that he be disabled under the

---

[4] This includes the Supreme Court's decision in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), which was expressly overturned by Congress through the ADAAA.

terms of the statute. To meet this standard, "plaintiff must show that: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such impairment; or (3) he was 'regarded as' having such an impairment by his employer." Maresca v. Blue Ridge Commc'ns, No. 09-2470, 2010 U.S. App. LEXIS 2552, at *5 (3d Cir. Feb. 5, 2010) (citing Marinelli v. City of Erie, Pa., 216 F.3d 354, 359 (3d Cir. 2000)).

### 1. Plaintiff's Impairment Does Not Substantially Limit a Major Life Activity

A major life activity is defined as one "of central importance to daily life," Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002), such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i). Pursuant to the EEOC guidelines, for an impairment to "substantially limit[] one or more . . . major life activities," plaintiff must demonstrate that he is

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Emory v. AstraZeneca Pharms. LP, 401 F.3d 174, 179-80 (3d Cir. 2005) (citing 29 C.F.R. § 1630.2(j)(1)). To determine whether plaintiff is substantially limited, courts should consider the following factors: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. (citing 29 C.F.R. § 1630.2(j)(2)). In addition, when evaluating a substantial limitation, the Court must take into

account the effects of any mitigating measures such as medication or treatment.  See Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999) ("[I]t is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures – both positive and negative – must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the [ADA]."); see also Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521 (1999) (applying Sutton, and concluding that plaintiff was not disabled under the ADA because, when medicated, his hypertension did not substantially limit his major life activities).

In this case, plaintiff claims that high blood pressure, related migraine headaches, and stress due to family problems restricted his ability to perform the major life activity of working by limiting him to a forty-hour work week.  (See Pl.'s Dep. 101-03.)  Plaintiff testified during his deposition that to treat his high blood pressure, his doctor prescribed medication, recommended that he take a diuretic and lose weight, and instructed, "don't work as much overtime, nighttime, weekends."   (See id. at 37-38.)  Plaintiff also stated that "family problems," including recent deaths in the family, contributed to his high blood pressure and to his five-day hospitalization in July 2005.  (Id. at 35-37, 43.)  As a consequence of these medical and mental conditions, plaintiff requested that he work no overtime, and this request was granted.  (See id. at 42-47.)

Plaintiff does not claim that his impairments interfered with his ability to work a forty-hour work week.  Rather, plaintiff testified during his deposition that "[he] could do [his] work to the best of [his] ability at the same quality, but only for the normal forty hours."  (Pl.'s Dep. 63.)  Plaintiff also testified to the success of his medical treatment: his blood pressure remained in the normal range following his discharge from the hospital, and the migraine headaches also

9

disappeared within "two or three days after [he] started taking the medication" that his doctor prescribed. (Id. 119, 127.)

The Court concludes that plaintiff's high blood pressure, related migraines, and emotional and family stress were not impairments that substantially limited a major life activity. While these conditions may have restricted plaintiff's ability to work overtime, none affected plaintiff's ability to perform his job. In fact, plaintiff testified that during a normal forty-hour work week, he could do his job very well. (Id. at 63.) As other courts have found, a restriction on overtime alone "does not demonstrate that the Plaintiff was substantially limited in any major life activity." Walter v. United Tel. Co. of Pa., No. 3:2004-255, 2006 U.S. Dist. LEXIS 80923, at *42 (E.D. Pa. Nov. 6, 2006); see also Kellogg v. Union Pac. R.R., 233 F.3d 1083, 1087 (8th Cir. 2000); Matheson v. V.I. Comty. Bank, Corp., 297 F. Supp. 2d 819, 828 (D.V.I. 2003); Duff v. Lobdell-Emery Mfg. Co., 926 F. Supp. 799, 807 (N.D. Ind. 1996). Accordingly, plaintiff is not disabled under the ADA, as he had no impairment that substantially limited a major life activity.

### 2.    Plaintiff Was Not "Regarded As" Having an Impairment

Plaintiff can meet the definition for a disability under the third theory if he shows that he was "regarded as" having an impairment that substantially limited a major life activity. To satisfy this test, plaintiff must show that either "(1) [the employer] mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) [the employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton, 527 U.S. at 489. "To prevail under the 'regarded as' prong, the plaintiff must establish that the employer believed that he was limited in his ability to work in 'either a class of jobs or a broad range of jobs in various classes as compared to the

average person having comparable training, skills, and abilities.'" Hershgordon v. Pathmark Stores, Inc., 285 Fed. Appx. 846, 848 (quoting Sutton, 527 U.S. at 491).  Thus, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job."  Murphy, 527 U.S. at 523.

In this case, plaintiff presents no evidence that defendant regarded plaintiff's high blood pressure, migraine headaches, or mental condition as substantially limiting plaintiff's ability to work.  Mere knowledge on the part of defendant that plaintiff was diagnosed with high blood pressure and related migraine headaches and was experiencing emotional stress does not imply that defendant considered plaintiff disabled under the ADA.  See Kelly, 94 F.3d at 109 ("[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled.").  Rather, to meet this standard, defendant must believe that plaintiff was substantially limited in performing a major life activity due to an impairment.  See Sutton, 527 U.S. at 489.  Evidence on the record demonstrates that defendant was concerned about plaintiff's job performance: the purpose of the meeting called by Cowley and Council-Baker on October 3, 2005, was "to discuss the recent change in [plaintiff's] behavior and the apparent lack of confidence that [plaintiff] ha[s] in [his] ability and judgment that [is] necessary to perform [his] assignments . . . ."  (Mem. of Oct. 3, 2005, Pl.'s Resp. Ex. 1.)  However, this is not evidence that defendant regarded plaintiff as precluded from his job – let alone a class or broad range of jobs – due to his medical conditions.  Thus, plaintiff fails to create a material issue of fact that he was "regarded as" disabled by defendant.

Accordingly, the Court concludes that plaintiff does not qualify as disabled under the any of the ADA's definitions.  As a result, plaintiff fails to establish a prima facie case for disability

discrimination.

### C. Plaintiff Presents No Evidence of Pretext

Notwithstanding the analysis above, defendant argues that even if plaintiff did establish a prima facie case, he presents no evidence of pretext, and thus, his discriminatory firing claim must fail as a matter of law. The Court agrees.

Courts apply the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), to discrimination claims under the ADA. See, e.g., Parker v. Verizon Pa., Inc., 309 Fed. Appx. 551, 555 (3d Cir. 2009). Under this framework, "[o]nce a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination." Stouch v. Twp. of Irvington, No. 08-3264, 2009 U.S. App. LEXIS 25784, at *11 (3d Cir. Nov. 24, 2009) (citing McDonnell Douglas, 411 U.S. at 802-05) (internal citation omitted).

In this case, defendant has stated a legitimate, non-discriminatory reason for plaintiff's discharge: he was fired for inappropriate and excessive use of the company cell phone. (Mot. ¶ 29.) In rebuttal, plaintiff argues, "Acme knew that they couldn't use my medical and emotional conditions to fire me. Excessive phone [use] gave them reasonable cause." (Pl.'s Resp. 3.) To show pretext, plaintiff must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

### 1.     Pretext Theory One: No Evidence That Employer's Reason for Termination Was Unworthy of Credence

To prove pretext under the first theory of pretext articulated in Fuentes, "plaintiff cannot simply show that the employer's decision was wrong or mistaken," but "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. at 765 (internal quotation marks and citations omitted) (brackets in original).  There is only limited evidence on this issue.  First, plaintiff asserts that the Verizon phone records are not accurate as to the amount of time he spent on personal calls; second, plaintiff claims that he was pressured by Cowley and other company officials to work additional overtime during the summer of 2005; and third, plaintiff argues that defendant should have notified him about the phone usage earlier and/or given him a chance to rectify the problem without losing his job.

First, plaintiff argues that he could not have made long calls to his elderly family members, as they spoke only broken English and could not maintain lengthy phone conversations.  (Pl.'s Dep. 82-83, 97.)  According to plaintiff, shorter phone calls are "more in line" which the time he spent on personal calls.  (Id. at 87.)  At most, this argument attempts to "show that the employer's decision was wrong or mistaken," as it was based on inaccurate phone records.  Fuentes, 32 F.3d at 765.  But to meet his burden, plaintiff must show more – specifically, "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" – which he does not.  See id.  There is no

contradiction where plaintiff has admitted that he used his cell phone inappropriately, and this was defendant's stated reason for firing him.

Second, plaintiff claims that defendant asked him to work overtime after he requested to work only a forty-hour week in July 2005. Plaintiff testified during his deposition that Cowley and Walther told him, "you're supposed to work a certain amount of overtime and call-ins" and that "they had to call in . . . outside contractors which would cost more money to them" when plaintiff would not work his share of overtime. (Pl.'s Dep. 46, 106.) Specifically, on three occasions, plaintiff alleges that he was asked to work additional hours when emergencies arose, and that he refused. (Id. at 47-48.)

None of these allegations about requests to work overtime make defendant's reason for firing plaintiff "unworthy of credence." Plaintiff spent 15,736 minutes – over 262 hours – on his company cell phone over a three month period. (Mot. ¶¶ 20-22.) Nearly 90 of those hours were spent on calls to plaintiff's aunt. (Id. ¶¶ 32, 35, 37.) Moreover, plaintiff admits that although the company cell phone was for business use only, he made personal calls to a number of family members, including his aunt, uncle, and father-in-law. (Pl.'s Dep. 70-71, 81, 84-85, 97-98.) Phone records reveal that plaintiff made personal calls during regular work hours as well as weekends and evenings. (See Mot. Ex. A.) No reasonable factfinder could conclude that plaintiff's conversations with Cowley and Walther regarding overtime reveal "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." Fuentes, 32 F.3d at 765. Rather, the record makes clear that plaintiff used defendant's cell phone for personal use – and excessively so – in violation of defendant's policy. Plaintiff's testimony about these conversations is insufficient to convince a reasonable factfinder

to "disbelieve the employer's articulated legitimate reasons," and thus the Court concludes that it is not evidence of pretext.  See id. at 764.

Finally, plaintiff argues that if defendant based its decision to fire him solely on his use of the company cell phone, it either would have told him to stop using the phone for personal calls or would have given him a chance to pay for the personal calls that he made.  (Pl.'s Resp. 2-3.)  However, this argument is without merit.  Defendant had no legal duty to allow plaintiff a second chance to conform to company rules or an opportunity to rectify his behavior before making the decision to fire him.  Thus, the Court concludes that plaintiff has not sustained his burden of proof under the first theory of pretext set forth in Fuentes.

### 2. Pretext Theory Two: Discrimination Was Not "More Likely Than Not" the Reason for Plaintiff's Termination

Under the second theory, which requires proof that discrimination was more likely than not the reason for the employer's action, plaintiff "must point to evidence with sufficient probative force" as to lead a factfinder to conclude "that the employer has previously discriminated against h[im], that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class."  Simpson v. Kay Jewelers, 142 F.3d 639, 644-45 (3d Cir. 1998).  Plaintiff has presented no evidence that defendant previously discriminated against him, discriminated against others, or treated other similarly situated persons more favorably.  On the other hand, defendant has presented evidence of its policies prohibiting harassment and discrimination; data on cell phone usage during the time period in question by defendant's five other electricians, whose average minute usage was 2,186

minutes and highest usage was 3,487 minutes; and information regarding the termination of two, non-disabled maintenance employees for theft-related offenses, including the firing of an employee for taking a pressure washer work approximately $350 without permission. (Mot. ¶¶ 10-13, 62-65.) Given this evidence and plaintiff's failure to present any evidence to the contrary, plaintiff fails to satisfy the second theory of pretext as set forth under Fuentes and Simpson.

### D. Plaintiff's Reasonable Accommodation Claim Fails

Finally, defendant argues that "plaintiff cannot succeed on his failure to accommodate claim because he was not disabled within the meaning of the statute and was nonetheless given every accommodation he requested." (Mot. 14.) As stated above, plaintiff is not disabled as defined in the statute, and thus fails to establish a prima facie case of discrimination. But regardless of this determination, plainitff's only requested accommodation was that he not work overtime and that he be given time off for doctor's appointments, and both requests were granted. (Pl.'s Dep. 46-47, 56, 64.) Plaintiff's reasonable accommodation claim is rejected for that additional reason.

## V. Conclusion

For the reasons stated above, plaintiff has failed to establish a prima facie case of discrimination under the ADA and PHRA, and he has presented no evidence of pretext. Accordingly, defendant's Motion for Summary Judgment is granted, and judgment is entered in favor of defendant and against plaintiff.

An appropriate order follows.